CHANCERY.          Blackwwll *vs* Blackwell, *et al.*

*Case 92.*              ERROR TO THE MADISON CIRCUIT.

                   *Husband and Wife. Settlements.*

*June 20.*      JUDGE GRAHAM delivered the opinion of the Court.

                   THIS suit in chancery presents the following facts:
Case stated.   Sally Robinson became the wife of Thomas Blackwell,
several years since. She inherited some estate by des-
cent from her deceased father and mother. Her broth-
er, Richard M. Robinson, was the administrator of
the mother's estate. Thomas Blackwell and wife re-
moved to Texas. In the year 1844, they visited Ken-
tucky. In January, 1845, they executed a power of
attorney to Randolph and Armistead Blackwell, em-
powering them, and either of them, to sell and convey
any real or personal estate belonging to them or either
of them, and to receive and collect money, &c. The
complainant, Sally Ann Blackwell, charges that under
this power, the two Blackwells sold a small tract of
land in Fayette, to McCann, and perhaps conveyed to
him. That McCann has paid a part, and yet owes for
the residue; that the Blackwells refuse to pay her any
thing, or surrender McCann's notes. She presents a
state of facts as to her condition, which if true, would
ordinarily require that the estate descended from her
parents, should be invested in a trustee, for her use,
separate from the control of her husband. The de-
fendants resist her application for relief, and state that
Randolph, the father of Thomas, had at various times,
advanced him in money and property, about $5,000, be-
ing as much as he could do, with a proper regard to the
wants of himself and family, and a suitable provision
for his other children. That during the visit of his son
Thomas and wife, they both importuned him to ad-
vance, or loan to Thomas some money, and finally he
was induced to borrow for them $1,200 of Walker, for
which he gave his own note, with his son Armistead as

his security. He has repaid the money, with interest, to Walker. Walker paid over to Thomas the money, and Thomas executed to Randolph Blackwell his note. Randolph Blackwell states, positively, that at the time he agreed to borrow, and did borrow the $1200 for them, it was expressly, and at the urgent solicitation of both, agreed that Thomas and Sally his wife, would execute a power of attorney authorizing said R. and A. Blackwell, or either, to sell such portions of said estates as belonged to Thomas and Sally, or either, and to apply the proceeds of any such sale in the payment of the sum so borrowed and loaned to said Thomas, and that they were in like manner, and for like purposes, to receive any money in the hands of the administrator, due to them. He admits the sale of the land to McCann, the reception of a part, say two thirds of the purchase money, and the transfer to him by A. Blackwell, of the notes of McCann for the residue. To his cross bill the complainant gives a response, positively denying any such understanding or agreement. The deposition of A. Blackwell, who was released by said Randolph, fully confirms all the statements of the latter. But this witness is liable to Mrs. Blackwell, if she is entitled to the reception of the purchase money from McCann. He took McCann's notes to himself, and transferred them to his father, who cannot release him from his liability to her. He is consequently directly interested in establishing his father's claim to the proceeds of the sale, and ought to have been rejected as a witness. His brother John, however, proves that Thomas Blackwell and wife agreed to make to his father and brother a power of attorney to sell so much of Sally Ann Blackwell's interest in the estates of her father and mother, as would be sufficient to re-pay said sum borrowed of Walker. He sustains his father's answer. The fact of the loan of money, and execution of the power of attorney, about or at the time of this alleged agreement, are circumstances entitled to some weight in sustaining the statement of this witness.

This is not the case of a husband or his creditor coming into a Court of equity to obtain a decree for property

The husband and wife unite in a request to the

BLACKWELL
*vs*
BLACKWELL.

father of the husband to obtain a loan of money, and made a power of attorney to the brother of the husband to sell the land of the wife to re-pay the borrowed money. After the sale of the land the wife seeks to have the proceeds of the land decreed to her—Held that it could not be done—that she having parted with her right, could not reclaim it.

or estate belonging to the wife during coverture. In such cases, generally the wife has been protected, and a suitable provision made for her. In this case, the *wife comes* into equity, seeking to avoid a disposition of a portion of her estate, made according to the proof, by her own voluntary consent, and at her request. It is not the case of a creditor of a husband seeking in a Court of equity subject to the husband's debts the property of the wife; but is the case of a debt created at the instance and urgency of the wife, although for the husband's benefit, and with a positive agreement that the proceeds of the sale of her estate should be applied to its payment. The land has been sold, converted into money, choses in action, and that money and the choses in action, applied according to the agreement of the parties before the institution of this suit. Under such circumstances, it would be manifestly unjust to deprive Randolph Blackwell of the proceeds of the sale to McCann.

In her bill she avers that her husband is poor and improvident. The answer denies that he is either. There is no evidence whatever, on this subject, except the declarations of the husband. If they can be regarded as evidence, they show that he is in flourishing, rather than depressed circumstances. This case differs from that of *Athey* vs *Knotts*, (6 *B. Monroe*, 24.) In that case, the attorney and agent acted for the wife, in the reception of the money, the husband never having attempted to obtain the possession of the money, or exercise control over it. In this the attorney acted as agent of both, and with the express agreement of both, that the proceeds should be applied to pay a debt created at her instance, as well as his. It is as though the notes had been taken to the husband, and by him transferred in good faith, and by her consent; and in such case, the husband not being insolvent, the assignee would be protected.

The funds in the hands of the administrator of Robinson, dec'd., and due to the complainant, are differently situated. The witness does not prove any agreement as to them. And although they were embraced in the power of attorney, yet as there is no evidence

that the wife ever agreed to part with her claim to that fund, the Court did right in not divesting her of it.

Upon the whole case, we concur with the Court below. The decree of the Circuit Court is affirmed.

*Turner* for plaintiff; *Caperton* for defendants.